UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-22433-CIV-HUCK/SIMONTON

LARRY KLAYMAN,

    Plaintiff,

v.

FREEDOM WATCH, INC., et al.,

    Defendants.
_____/

ORDER ON DISCOVERY MOTIONS

Presently pending before the Court is Defendants' Emergency Motion For Protective Order Concerning Plaintiff's Notices of Depositions Duces Tecum (DE # 30, duplicate DE # 36 filed in conventional manner, as required for emergency motions). This motion is referred to the undersigned Magistrate Judge (DE # 12). In addition, Plaintiff has filed a corresponding Motion to Compel (DE # 50). Hearings were held on October 29, 2007 and November 8, 2007. During the course of the hearings, the Court set forth certain limits on permissible discovery, and guidelines to use in connection with the pending depositions. This Order sets forth and expands upon those rulings.

    I. BACKGROUND

Plaintiff has filed a six-count Complaint against Defendants alleging: Trademark Dilution, as prohibited by 15 U.S.C. § 1125(c)(1) (Count One); False Designation of Origin, as prohibited by 15 U.S.C. § 1125(a), in which he alleges willful and wanton conduct to support a claim for treble damages, punitive damages and costs and attorneys' fees pursuant to 15 U.S.C. § 1117(a) (Count Two); Florida Trademark Infringement, as prohibited by common law and Fla. Stat. § 495.131 (Count Three); Florida Trademark dilution, as prohibited by Fla. Stat. § 495.151 (Count Four); Unfair

Competition, as prohibited by Florida law (Count Five); and Florida Common Law Trademark Infringement (Count Six) (DE # 1). In general terms, Plaintiff contends that he is the owner of the Trademark "FREEDOM WATCH" and the Chairman of FREEDOM WATCH, INC., a 501(c)(3) non-profit public interest foundation with the mission of promoting and protecting freedom both domestically and abroad. Plaintiff contends that the use of the name "Freedom's Watch" by the corporate and individual defendants has violated his common law and statutory trademark rights. Plaintiff alleges that the corporate defendant, Freedom's Watch, Inc., claims to be a 501(c)(4) non-profit foundation which was established to support the current war in Iraq and increase support for the President's troop surge policy in Iraq. Plaintiff alleges specifically that "[t]he unlawful infringement and use of the FREEDOM WATCH name in conjunction with the promotion and furtherance of the Iraq war destroys the real FREEDOM WATCH trademark as KLAYMAN and his FREEDOM WATCH, while supportive of removing Saddam Hussein, stand for the position that the Iraq war does not promote freedom but in fact damages it as the Iraqi people are incapable of and are in fact opposed to democracy. The civil war in Iraq demonstrates that Iraq has become little more than a refuge for terrorism in the midst of a bloody and fruitless civil war with no end in sight. Thus, DEFENDANTS are not in any way affiliated or associated with KLAYMAN or the real FREEDOM WATCH and they have absolutely no legal right or authority to use, market, advertise, damage and destroy the FREEDOM WATCH mark." (DE # 1 at 8, ¶ 37).

In their answer, Defendants deny that they have infringed any trademark belonging to Plaintiff, and deny that the "Freedom Watch" mark is distinctive and has become associated with Plaintiff. Defendants affirmatively assert that Plaintiff does not own the mark "Freedom Watch," and lacks standing to bring this action, and also

contend that Defendants' use of the term "Freedom's Watch" is a fair use of that term (DE # 21).

## II. THE DISPUTES CONCERNING PLAINTIFF'S DISCOVERY REQUESTS

Defendants request the Court to enter an Order to "prohibit Mr. Klayman from seeking discovery concerning the political mission, political and policy discussions, objectives, sponsorship and donors of Defendant Freedom" (DE # 30 at 10). As part of this relief, Defendants contend that the Court should strike Plaintiff's document requests Nos. 4 and 36 in their entirety, and limit Nos. 8, 11, 15, 28, 30, 31 and 34 to exclude documents concerning the above information. Defendants also seek an order directing the parties to agree upon a confidentiality order which would protect sensitive non-public information, and for a temporary interim protective order which "directed the parties and their counsel not to disseminate any depositions or discovery materials to non-parties or the public at large until further order following Court approval of such a protocol" (DE # 30 at 2),   Defendants reserved their right to file other objections to the document requests in accordance with an expedited production schedule (DE # 31 at 13n.4). The need for emergency relief was based upon the fact that depositions were set to commence shortly. Defendants also an objected to the location and dates of the depositions.

At an emergency hearing, the Court granted relief with respect to the locations and dates of depositions, and extended the discovery period for one week, through December 19, 2007 (DE # 48). In addition, the Court set November 1, 2007 as the date for all objections to the requests for production to be filed, with any Motion to Compel with respect to those objections due on November 5, 2007. The response was due November 7, 2007, and a hearing was set on November 8, 2007.

Thereafter, Plaintiff filed his opposition to the Emergency Motion (DE # 47), as well as a Motion to Compel (DE # 50).[1]  Defendants have replied with respect to their Emergency Motion (DE # 59), and responded to the Motion to Compel (DE # 60).

### Defendants' Emergency Motion for Protective Order

The central theme of Defendants' Emergency Motion is that Plaintiff is seeking to use this lawsuit to explore what they describe as "a political conspiracy theory" in which Plaintiff is seeking information in an effort to establish that the Bush Administration is using Defendant Freedom's Watch for the purpose of unlawfully evading the statutory restrictions on the use of soft money contributions to such organizations; and, that numerous discovery requests are directed to this purpose and are not relevant to the trademark infringement and unfair competition claims which form the basis of this lawsuit.  Defendants assert that Plaintiff will not agree to a protective order, and that he intends to publicly disclose all information obtained in the course of this discovery.  Disclosure of such sensitive information will harm Defendants in two ways.  First, Defendants contend that "discoverable information about the internal operations and planning process of Defendant Freedom's Watch–*e.g.*, its internal communications and plans for fundraising, future grassroots advertising and other efforts to advance its mission–will harm Freedom's Watch by providing an improper advantage to organizations with opposing viewpoints, which do not have to disclose their own

---

[1] The purpose of setting a date for the objections to be filed that was in advance of the depositions set by the Notices duce tecum, as well as in advance of the hearing, was so that all issues regarding these document requests could be resolved at the same time. The Court envisioned that documents which were not the subject of the objections would be produced or made available at the same time the objections were filed; however, this was not expressly stated.  As a result at the hearing, the Court learned that no documents had been produced, which Plaintiff asserted as the basis for his vague Motion to Compel, stating in essence  that without seeing what documents Defendants intended to produce, he was not sure if he would be satisfied with the production.

internal planning process (DE # 31 at 12).   In addition, Defendants rely upon the qualified privilege recognized under the First Amendment right of free association as protection from disclosure of internal operations, planning process and future plans, as well as donor lists.  At the hearing, Defendants also asserted that a Protective Order would not suffice to protect it from harm under the circumstances of this case since Plaintiff himself and his organization (Freedom Watch) are also direct competitors of Defendant Freedom's Watch, and have taken an opposing view regarding the present war against Iraq, and thus protection from disclosure to Plaintiff is required in addition to protection from other non-party organizations with opposing viewpoints.  Defendants argue that although in some cases restricting discovery to "attorneys eyes only" can alleviate confidentiality concerns, and thus avoid discovery disputes over arguable relevance, in this case Plaintiff represents himself and thus this added layer of protection is not available.

Defendants specifically address the following discovery requests as the object of their requested protective order.  They seek to strike entirely Requests nos. 4 and 36, which seek, respectively, all documents sent to (# 4) and received from (# 36) "any person(s) employed or otherwise associated with the current Bush Administration related to the creation and formation of Freedom's Watch including but not limited to its mission, corporate structure, funding, budgets, staffing, donors, sponsors and directors."

Defendants seek to limit the following discovery requests:

> **Requests Nos. 8 and 11**, which seek, respectively, all documents received from (# 8) or sent to (# 11) "any person(s) employed by or otherwise associated with the Federal Election Commission related to the creating and formation of Freedom's Watch including but not limited to its mission, corporate structure, funding, budgets, staffing, donors, sponsors

and directors.

**Request No. 15**: All documents that refer or relate to proposals for, preparation or selection of Your advertisements or promotions that use the mark Freedom's Watch.

**Request No. 28**: All documents using the "Freedom's Watch" mark that reflect Your solicitation of donations, clients and/or supporters for Freedom's Watch.

**Request No. 30**: All documents concerning the creation of Freedom's Watch including notes and memoranda.

**Request No. 31**: All documents evidencing or relating to communications between You and media outlets, including but not limited to Fox news, relating to the use of the name Freedom's Watch.

**Request No. 34**: All documents concerning searches, including trademark searches, Google searches, Yahoo searches, other Internet searches, and Lexis/Nexis searches, performed by or on behalf of You in connection with Freedom's Watch or [its] creation and formation.

In opposition, Plaintiff contends that he is entitled to explore whether Defendants are using Freedom's Watch for an illegal purpose, *i.e.* to avoid the restrictions on the uses of soft money contributions, since this is relevant to the determination of whether his trademark, Freedom Watch, has been tarnished. Plaintiff asserts that the issue of such tarnishment is relevant to the determination of damages, stating, "It is obvious that the quantum of damage would be impacted by the unauthorized association of Plaintiff's mark with activities that are, in fact, contrary to the intended use of the mark, improper or illegal" (DE # 47 at 4). Plaintiff argues that he is entitled to discovery beyond whether Defendants' ads are themselves "illegal," but also as to the broader issue of "how the ads came to life and under what authority and how they are used. In other words–the who, what, when, where, and how of the Freedom's Watch formation and its creator's intentions, even if it touches on obvious Bush administration involvement" (DE # 47 at 5).

**Plaintiff's Motion to Compel**

In his corresponding Motion to Compel (DE # 50), Plaintiff incorporates by

-6-

reference his opposition to the Motion for Protective Order, and specifically discusses production requests 4, 36 and 8, which are quoted above in connection with Defendants' Emergency Motion for Protective Order.[2] Plaintiff argues that he is entitled to discover information regarding "who was involved in the creation of Freedom's Watch, when it was created, why it was created, its intended uses, its actual uses, any improper uses, such as circumventing the ban on soft money political advertising, and any and all uses which tarnish the mark such as uses which include but are not limited to promotion of the Iraq war, which has been reported to have been conceived of in conjunction with, or inside, the Bush administration itself .... Plaintiff also seeks to discover when defendants knew that Plaintiff had first used the Freedom Watch mark ...." (DE # 50 at 7). Plaintiff asserts that he is entitled to this information even if it "reaches into what occurred in conjunction with or by the Bush administration" *Id.* Finally, Plaintiff contends that the information he seeks is "exponentially more relevant in a case, such as this, where Defendants are not only infringing upon the Freedom Watch mark, but are actually using it in the same "class" of activities as Plaintiff. That is, both are engaged within the non profit, public-interest domain and, as such, are thereby direct competitors for the public's attention, influence, and support" (DE # 50 at 9-10).

In opposition, Defendants note at the outset that they provided detailed and lengthy objections to each specific production request, and that Plaintiff has failed to respond to most of those objections, and has failed to challenge or rebut the specific

---

[2] Plaintiff also cites to, but does not discuss, requests nos. 11, 15, 28, 30, 31 and 34 as examples of requests that he contends Defendants' have improperly refused to provide documents on the grounds that those requests seeks irrelevant information regarding political mission, political and policy discussions, objectives, sponsorship and donors (DE # 50 at 3). These requests were included in Defendants' Emergency Motion for Protective Order.

authority cited to support those objections.  Defendants contend that this failure to comply with the requirement that each request be specified and the objection addressed should result in denial of the Motion to Compel without further analysis (DE # 60 at 1-2).  In addition, Defendants set forth the 16 specific objections they made to various discovery requests, identify the requests to which each objection pertains, and set forth their arguments in support of these objections (DE # 60).  Plaintiff did not directly respond to those objections at the hearing.  To the extent that Plaintiff has challenged the objections, they are addressed below.[3]

### III.  LEGAL ANALYSIS

At the outset, it is important to note that the scope of discovery is determined by the claims and defenses raised in the case, although broader discovery into the subject matter of lawsuit may be allowed if there is a sufficient showing.  Fed. R. Civ. P. 26, *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1368 n.37 (11th Cir. 1997).  Central to the determination of a trademark infringement claim is whether a defendant's use of a mark has created a "likelihood of confusion" both with respect to the unfair competition claims and the dilution claim.[4]  Of course, evidence of actual confusion, or actual dilution, is strong evidence of the likelihood of such.  The focus, however, is on the effect of the use of the mark on the public.  In addition, as recognized by Defendants in

---

[3] The analysis of the objections provided by Defendants demonstrates that many of the objections are clarifications of their understanding of terminology, or reservations of rights to challenge the legal theories upon which Plaintiff bases his claims for relief.  Thus the objections are sustained, except to the extent discovery is ordered herein.

[4] The Trademark Dilution Revision Act of 2006 made specific changes to federal dilution law, including a rejection of the "actual dilution" standard set forth by the United States Supreme Court in *Moseley v. v. Secret Catalogue, Inc.*, 537 U.S. 418, 433, (2003) in favor of a "likelihood of dilution" standard for determining liability.  *Dan-Foam A/S v. Brand Named Beds, LLC*, 500 F. Supp.2d 296, 307 (S.D.N.Y. 2007).

the case at bar, the internal actions and deliberations of an alleged infringer are relevant to the determination of whether a defendant has acted in bad faith, or with bad intent, in using the mark at issue (DE # 59 at 5-6; DE # 60 at 9). Obviously, information regarding whether the name "Freedom's Watch" was adopted with the intention of capitalizing on Plaintiff's reputation or goodwill, or on any confusion, is relevant and discoverable.

In the case at bar, the allowable scope of discovery must also be viewed in the context of the qualified associational privilege under the First Amendment. *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958); *American Federation of Labor and Congress of Industrial Organizations v. Federal Election Commission*, 333 F.3d 168 (D.C. Cir. 2003); *Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538 (11th Cir. 1985); *Marshall v. Bramer*, 828 F.2d 355 (6th Cir. 1987); *Anderson v. Hale*, 2001 WL 503045 (N.D. Ill. 2001). "The First Amendment associational privilege emerges when a discovery request specifically asks for a list of a group's anonymous members, or requests any similar information that goes to the heart of an organization's associational activities, and such disclosure could arguably infringe upon associational rights." 2001 WL 503045 at *3.

Moreover, even where First Amendment rights are not implicated, Courts are hesitant to permit disclosure of customer lists and other proprietary information to a direct competitor. Courts have taken different views regarding whether such disclosure will be ordered, depending on the circumstances of the case. *Compare Globalaw Ltd. v. Carmon & Carmon Law* Office, 452 F. Supp.2d 1, 61-62 (D.D.C. 2006); Foxworthy *v. Sun Art Designs, Inc.,* 1997 WL 196624 (S.D. Fla. 1997) (refusing to require disclosure of customer names) *with Autotech Technologies Ltd. v. Automationdirect.com, Inc.,* 235 F.R.D. 435 (N.D. Ill. 2006) (ordering disclosure subject to

**a confidentiality order).**

**Based upon the existing state of the record with respect to discovery, and considering Plaintiff's failure to articulate a legally cognizable need for internal information and donor lists, the undersigned has determined that the scope of discovery should be limited as follows:**

**1. At the present time, Defendants shall not be required to identify any donors, other than those whose disclosure is already in the public domain or is otherwise required by law. In other words, Defendants cannot refuse to disclose information which is or will otherwise become public record information. However, Plaintiff is entitled to discovery regarding aggregate financial information and the number of donors. This ruling is without prejudice to renew the request for more specific information if a more persuasive showing of need can be made after taking the initial depositions and receiving the initial discovery.**

**2. Plaintiff may discover the identity of the persons who formed Defendant corporation, and may discover the identity of all persons who played a role in the determination to use the name "Freedom's Watch," and how the name was selected. Plaintiff is entitled to discovery regarding all public uses of the name, *i.e.*, what advertisements were placed, what market was reached, how advertising and solicitation was actually conducted. Plaintiff is not entitled to discovery with respect to the internal decision-making process which led to the selection of various markets and methods of advertisements, or other internal discussions such as the motive in forming Defendant Freedom's Watch. That is, the focus of the lawsuit is the use of the mark with respect to the consuming public; discussions which did not lead to such use are not relevant (except for discussions pertaining to the decision to use the name, or discussions**

regarding Plaintiff or his organization). In other words, Plaintiff may freely inquire with respect to who discussed the use of Freedom's Watch, who conceived the use of the name, who was consulted regarding the use of the name, who was involved in the use of the name, and the public uses of the name, as well as any evidence of actual confusion. The issue of further disclosure of persons consulted with respect to the formation of the Defendant organization, beyond the formal officers and directors, may be revisited if it appears that the formal officers and directors are not sufficiently knowledgeable regarding the relevant areas of inquiry.

3. Defendant may direct a witness to refuse to answer a question that (1) is outside the above scope, or (2) calls for an answer that is subject to a privilege, including the associational privilege if it applies. The parties may seek a ruling from the undersigned Magistrate Judge during the course of depositions, if necessary.[5]

4. The Court finds good cause to enter a protective order, based upon the fact that Plaintiff seeks non-public, sensitive and proprietary information and documents. An interim protective order will apply which permits either party to designate discovery material as confidential. Such information shall not be disclosed to anyone other than counsel and the parties absent further order of the Court. Either party may file a motion which requests the Court to review the designation of material as "confidential." If confidential information is sought during the course of a deposition, only that portion of the deposition shall be sealed until further order of the Court. It is the Court's intention that as little information as possible be sealed and protected from disclosure.

---

[5] Defendants' suggestion at the hearing that a Special Master may be necessary to preside over depositions is denied without prejudice to seek such relief in a written motion, after consultation with opposing counsel.

IV.     CONCLUSION

Therefore, based upon a review of the record as a whole, including the arguments made at the hearings, it is hereby

**ORDERED AND ADJUDGED** that Defendants' Emergency Motion For Protective Order (DE # 30, duplicate DE # 36) and Plaintiff's Motion to Compel (DE # 50) are both **GRANTED, IN PART**, as set forth above.

**DONE AND ORDERED** in chambers at Miami, Florida, on November 12, 2007.

_____
**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

Copies furnished to:
The Honorable Paul C. Huck, United States District Judge
All counsel of record